Case No. 16-5054, Judicial Watch, Inc., Appellant v. United States Department of Defense. Mr. Aldridge for the Appellant, Mr. Quincy for the Appellee. It's too late. It's not too late for expedition. It's too late. Mr. Aldridge, good morning. Good morning, Your Honors. May it please the Court. My name is Jason Aldridge. I represent Judicial Watch, the Appellant, in this case. This is a FOIA matter. It's concerning records, seeking records about the decision by the Department of Defense to release five Guantanamo Bay detainees in exchange for an individual, Sergeant Bo Bergdahl, who was being held by the Taliban. Now, under the National Defense Authorization Act of 2014, whenever the Department of Defense decides to release some of these detainees, they're required to notify Congress. One of the records we received in response to the request was one of these notification letters. Once that record had been produced to us, the Department of Defense did not move for summary judgment. Their moving papers disclosed another record that we felt might be responsive. That document is the Lumpkin Memorandum. The district court judge ordered that a portion of that memorandum be released. I believe it's a five-page memorandum, but only the subject line was actually released. The rest is clearly redacted. The Judicial Watch's position is that this record is no longer pre-decision or deliberative. It's a final determination, and it should be released in its entirety. What would it have to contain for that proposition to be true? It would have to contain the final decision of the Secretary, his determination to release the detainees, to go through with the exchange. There's evidence in the record that it was common for the Secretary of Defense to get a cover memo like this, an attached correspondence, to read the cover memo, sign the attached correspondence if he agreed with it and was ready to notify Congress. I don't think there's anything in the record suggesting that when the Secretary engages in that common practice, he is thereby adopting the cover memo as his decision. And given the absence of such evidence, I'm not sure that you've borne your burden. Well, Your Honor, that is our argument. The argument is the government's affidavit stating ordinary practice. When he signs these memorandums, he's adopting the reasoning contained. When he signed the letters, he's also adopting the reasoning contained in the Lumpkin memorandum. But it seems just as reasonable to assume that a memo might say, you know, I suggest you send these letters to Congress. You could do it for reason A. You could do it for reason B. You could do it for reason C. You know, we leave that to your discretion. And the Secretary could read it and say either I think reason A is off the wall, but I agree with reason B and reason C. Or these reasons all seem wrong to me, but everything in the letter is precisely what I want to communicate and therefore sign. So I'm just not sure that there's any evidence to support your proposition. It might be the case, but it might very well not be the case and we need to rely on evidence. Your Honor, the evidence is the request sought final determination. And the court held when the record was responsive, the court was in effect saying that it was a final determination. That's the second part of the argument. I mean, if it wasn't a final determination, it would not have been responsive. There shouldn't have been anything produced. The history court later reflected on that ruling and said that there may have been a sort of abundance of caution. I'm sorry. If I recall correctly, is this Judge Rothstein? Judge Jackson. So first she said the document's responsive, and then later she returned to that issue, as I recall, and said that ruling may have been an excess of caution or something like that. I'm not sure the judge did say that. I'll find it. If it exists. No need to weigh in. So you're relying on the tension between the apparent conclusion of the district judge that this was a decisional document given the narrowness of your amended FOIA request as seeking only decisional documents. If she's listing it at all in a Vaughan index or requiring that it be identified, then that must be because it's decisional, and therefore, in your view, it needs to be produced. It's no longer deliberative because the decision has been made. Yes. Yes, Your Honor. Counsel, page 74. In an abundance of caution, the court required the defendant to formally assert the deliberative process over the related redacted portions of the Lumpkin Memorandum, and gave plenty of time to explain his reasoning for why the privilege did not apply. The defendant filed the notice formally asserting the deliberative process privilege. The plaintiff filed his response, arguing the secretary had either formally or informally adopted the memorandum as part of his final decision, and therefore, the record should be produced even if it was deliberative. And I think she goes on to say, but in any event, the ruling that it was responsive is not binded here, is it? The ruling that it was responsive? Yes. I don't believe so, Your Honor. Okay. So it's an interesting factoid, if that's about it. But there's nothing in the decision either that takes back the initial ruling that it was responsive. How do you propose we determine whether the memo is decisional or not? Whether it constitutes a final determination, a final decision? Yeah. Simply by adopting the government statement, the government statement of the Heritage Declaration, regarding their ordinary practice regarding the records, relying on the government affidavit. Well, that's where I started, though, and I thought the government said the typical practice is cover memo, accompanying letters. Often the secretary only signs the accompanying letters. And so I'm wondering why it's a necessary implication of that practice that the secretary is thereby adopting the memo as the explanation of his decision and why we wouldn't, in fact, read the opposite from it, that the secretary is saying, I'm going to keep it narrow. I'm just going to adopt as my decision what's in the letters and not cross the bridge of whether there might be additional sort of other considerations that I'm just not adopting. Well, Your Honor, that does raise another issue. It's not entirely clear how much the content of the congressional notification letter matches up to what's in the Lunkin Memorandum, since the documents are largely redacted, but we can't tell. But if the Lunkin Memorandum substantially contains the same information as the congressional letter, that would be a further implication that it does constitute a final decision. And also, I think you'd— And if it weren't? If it doesn't match up, again, we would still rely on, you know, the secretary's ordinary practice of signing the memorandum. Which cuts both ways. Your Honor, I would also point out that the congressional notification letters are just that. They're just notifications. The only other record apparently at issue here is the Lunkin Memorandum. If that's the only other record, it must be the final decision. If there were other records, presumably they would identify them and give us a bond index, but those are the only two records at issue, the congressional notification letter and the Lunkin Memorandum. There may be—I mean, many decisions are made within government where the decision itself is a decision that the secretary crystallizes in his or her own mind, and then there's a memorialization of the decision. And it may—are you questioning that it could be the case that the letters are, in fact, the only written memorialization? It doesn't seem to me that we have a reason to doubt that they might, in fact, be the only written memorialization of the decision. You mean the— The letters might, in fact, be the only written memorialization of the decision. You write their report of the decision. The decision is in the secretary's mind and resolve. But I'm not—and I know you pointed to record-keeping requirements, but I don't have a basis in this briefing and record to conclude that there must necessarily be a document over and above a notifying letter that memorializes a decision like this. Yeah, Your Honor, our reading of it was that the notification of the letters, I mean, based on what we could tell from it, that letter was simply a notification. We didn't see any other purpose to it. Yeah, after—during the briefing, it seemed like the Lunkin memorandum that that was the actual, more likely the actual decision. Your Honor, I think I'll reserve the remainder of my time. All right. Thank you. Are there any other questions, Your Honor? No, I'm just saying thank you. Oh, okay. I thought you'd completed it. All right. May it please the Court, August Flangey with the Justice Department, here on behalf of the Defense Department. We think this is a straightforward Exemption 5 case. The document issue is a recommendation to the Secretary made by an official who was a subordinate who did not have authority to make the decision. The Secretary then made the determination to transfer as is reflected in the actual letter to Congress, which reflects the determination document.  It says, quote, that these various statutory provisions are met, and that's a JA-17. So that document itself reflects on its face that it is the decision document of the Secretary on the transfer. Now, if the memo, the cover memo, had a line for the Secretary's signature and was signed by the Secretary, would your position be the same? I think if that were the case, then it would likely be an express adoption. This Court's Afshar decision is very clear that only an express adoption in a non-exempt memo would constitute a sort of adoption of the pre-decisional document. Can I ask you about that? Because that concerned me with something the district court said after relying on Afshar on page 76. She said, absent some showing that the agency either expressly or implicitly utilized the Lumpkin memorandum. What about that, or implicitly? I don't think that's enough, is it? No. An implicit adoption theory is not something this Court has embraced. In Coastal States, it talks about implied adoption. And I think there, they're really talking about post-decision conduct using the deliberative materials that is not actually, makes it not deliberative because it's actually being used post-decision to explain the agency's decision. And if the court, excuse me, if the agency does that, it's making an intentional determination that it's going to use this analysis to explain a decision that's already been made. And it's very clear that using material to explain an agency decision is not a deliberative document in that circumstance. So it's sort of taking something that was deliberative and using it after the fact to explain, and that is sort of what I think Coastal States. But that's still explicit or express. Yeah, I would still say that's an express adoption. It's just through the conduct of the agency after the fact of the decision. And that would be the case if this memo said, you know, dear Secretary, here are the recommendations. If you endorse these recommendations as your final decision, please sign and transmit to Congress the attached letters. If the memo said, and then the Secretary. If you endorse these reasons as your final decision, please sign and send the attached letters. If that were the case, then that would be, in your view, an express adoption of that. That would convert that memo into a decisional memo. Yes, I think the language you mentioned is important because the Secretary has to accept the reasoning set forth in the subordinates' memo explicitly in order for there to be an adoption. And we don't have anything like that. We don't have a memo that was signed by the Secretary. We have just a recommendation memo, and then we have letters signed by the Secretary. And some might characterize that as an implicit adoption, but it's stronger than it's got explicit action or implication that really ties it down. You want the agency decision maker to make the decision that what the subordinate did is going to be the official agency word on the issue. The official agency position. And we simply don't have that here. And we think the case fits very comfortably within this Court's precedence on these issues. And if there aren't further questions, I'd encourage the Court to affirm. All right. Thank you. Does Mr. Aldrich have any time? Okay. Mr. Aldrich, do you want to take a minute or something in reply? Your Honor, I'd just like to say one more thing. Okay. One more time. Since the panel hasn't seen either the congressional notification letter or the Lunkin memo, it might be helpful for this Court to compare them and see if they're identical. I can tell you that we have those available to us, both of them. Yes, I think it might be helpful to compare them and see if they're identical or close to identical. I would further strengthen our position that it is a final determination that should be released. All right. Thank you. Thank you, Your Honor.
judges: Henderson, Pillard, Ginsburg